UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

JAMES HOWARD SHAUL,

                Petitioner,

v.

MATT MACAULEY,

                Respondent.

_____/

Case No. 1:21-cv-1010

Honorable Phillip J. Green

## **OPINION**

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254.  Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court."  Rule 4, Rules Governing § 2254 Cases; *see* 28 U.S.C. § 2243.  If so, the petition must be summarily dismissed.  Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face).  A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false.  *Carson v. Burke*, 178 F.3d 434, 436–37 (6th Cir. 1999).  After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

## Discussion

### I.    Factual allegations

Petitioner James Howard Shaul is incarcerated with the Michigan Department of Corrections at the Bellamy Creek Correctional Facility (IBC) in Ionia, Ionia County, Michigan.  On January 30, 2015, a Chippewa County Circuit Court jury convicted Petitioner of first-degree criminal sexual conduct (CSC-I), in violation of Mich. Comp. Laws § 750.520b, first-degree vulnerable adult abuse, in violation of Mich. Comp. Laws § 750.145n, fourth-degree criminal sexual conduct (CSC-IV), in violation of Mich. Comp. Laws § 750.520e, and a violation of the Sex Offender's Registration Act (SORA), Mich. Comp. Laws § 78.721 *et seq.*  On March 31, 2015, the court sentenced Petitioner as a fourth habitual offender, Mich. Comp. Laws § 769.12, to concurrent prison terms of 60 to 90 years for CSC-I, and 3 years, 10 months, to 15 years for first-degree vulnerable adult abuse and CSC-IV.  The court also sentenced Petitioner to a 12-month jail term for the SORA violation.

Petitioner directly appealed his convictions and sentences to the Michigan Court of Appeals.  Petitioner raised several issues in a brief filed with the assistance of counsel; he raised several more in a *pro per* supplemental brief.  The court of appeals issued an unpublished opinion on November 22, 2016.  The appellate court described the underlying facts as follows:

> According to the 56-year-old immobile and wheelchair-bound quadriplegic victim, defendant, who was the then-boyfriend of one of her caregivers, was alone with the victim when he began asking her personal sexual questions while he was "touching himself" in her presence.  Defendant then approached and stood beside the victim, exposed his penis, and asked her if she wanted to touch it or put it in her mouth.  The victim testified that defendant then rubbed her left

2

nipple through her shirt.  She testified that defendant tried to put his finger in her "private part" but never did and that he "only touched the hairs of my private area" and "didn't touch the inside."  He then pulled up her shirt, spit "over [her] private part", and ejaculated on her stomach.  According to the victim, during the incident her urostomy bag was torn from her body.  She testified that defendant refused her repeated requests for him to leave her home or to allow her to call a caregiver.

*People v. Shaul*, No. 326905, 2016 WL 6902017, at *1 (Mich. Ct. App. Nov. 22, 2016) (herein *Shaul I*).

"The facts as recited by the Michigan Court of Appeals are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1)."  *Shimel v. Warren*, 838 F.3d 685, 688 (6th Cir. 2016) (footnote omitted).  Although Petitioner may contest many of the facts described by the court of appeals, he does not claim that the court's description of the evidence is inaccurate.  Moreover, Petitioner's habeas claim does not depend on a determination that the court of appeals' determinations of fact were unreasonable on the record.  Because Petitioner does not challenge the facts as described by the court of appeals—and does not offer any evidence to overcome the presumption—the Court will presume those facts to be correct.

The court of appeals agreed with Petitioner's challenge to his CSC-I conviction, concluding that there was not sufficient evidence before the jury to permit the jurors to find, beyond a reasonable doubt, that Petitioner had penetrated the victim's genital opening.  The court of appeals vacated Petitioner's CSC-I conviction.

Petitioner also challenged the scoring of six offense variables used to calculate Petitioner's minimum sentence under the Michigan sentencing guidelines.  The court concluded that the trial court had erred in scoring 10 points for offense variable 3, in scoring 50 points for offense variable 7, and in scoring 25 points for offense variable 11.[1]  *Shaul I*, at *5–6.  The court, therefore, also remanded the matter back to the trial court for resentencing.

The prosecutor sought leave to appeal to the Michigan Supreme Court; Petitioner sought leave to cross-appeal.  That court denied leave by order entered April 4, 2017.

Petitioner moved to waive resentencing, but the trial court denied the motion and resentenced Petitioner as directed by the court of appeals.  The only sentence that changed was the sentence for vulnerable adult abuse.  The trial court increased Petitioner's sentence from the 3-year, 10 month, to 15-year sentence originally imposed.  The court sentenced Petitioner to 19 years to 28 years and 6 months' imprisonment on that conviction.  Although the offense variable scoring was altered by the court of appeals' decision, Petitioner's recommended minimum sentence range remained the same: 58 to 228 months.[2]  *People v. Shaul*, No. 342484, 2019 WL 1780668, at *2 (Mich. Ct. App. Apr. 23, 2019) (herein *Shaul II*).

---

[1] The appellate court's conclusion regarding the error in scoring offense variable 11 necessarily followed from the court's conclusion that there was insufficient evidence to support penetration.  Offense variable 11 calls for a score of 25 points where there is one criminal sexual penetration.  Because the court determined there was not sufficient evidence of penetration, the score should have been zero.

[2] When converted, 228 months is 19 years.

4

Petitioner appealed his new sentence claiming, among other things, that the trial court's imposition of a substantially increased sentence for vulnerable adult abuse was vindictive and, therefore, a violation of due process. The court of appeals addressed Petitioner's "vindictive sentence" claim as follows:

> "While sentencing discretion permits consideration of a wide range of information relevant to the assessment of punishment . . . we have recognized it must not be exercised with the purpose of punishing a successful appeal." *Alabama v. Smith*, 490 US 794, 798; 109 S Ct 2201; 104 L Ed 2d 865 (1989) (citations omitted). "Due process of law, then, requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial." *North Carolina v. Pearce*, 395 US 711, 725; 89 S Ct 2072; 23 L Ed 2d 656 (1969), overruled in part on other grounds by *Smith*, 490 US at 794. "In order to assure the absence of such a motivation, we have concluded that whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear." *Id*. at 726. "Otherwise, a presumption arises that a greater sentence has been imposed for a vindictive purpose—a presumption that must be rebutted by objective information . . . justifying the increased sentence." *Smith*, 490 US at 798–99 (quotation marks and citations omitted).
>
> The presumption of vindictiveness articulated in *Pearce*, 395 US at 711 applies "where the same judge imposes both the original sentence and the sentence after retrial." *People v. Mazzie*, 429 Mich 29, 33; 413 NW2d 1 (1987). The presumption may be overcome only when the trial court articulates the rationale for the increase and where the "extent of the increase in the sentence bears a reasonable relationship to the new information." *Id*. at 36.

*Shaul II*, at *3–4.

The state urged the court of appeals to conclude that Petitioner's sentence was not, in fact, "increased" because 19 years to 28 years, 6 months is less than 60 to 90 years. The court of appeals, however, concluded that the relevant comparison was not between 60 to 90 years and 19 years to 28 years, 6 months, but between 3 years, 10 months, to 15 years and 19 years to 28 years, 6 months. *Id*. at *4. Because the

trial court had not articulated the reasons for the "increased" sentence, the appellate court vacated Petitioner's sentence for vulnerable adult abuse and remanded, once again, for resentencing. The court directed the trial court to "state with specificity its reasons for imposing the same or a different sentence." *Id.*

On remand, the trial court imposed the same sentence: 19 years to 28 years, 6 months. Petitioner appealed.

The court of appeals recounted the trial court's relevant articulation of the reasons for Petitioner's sentence as follows:

> Well, clearly to begin with first and foremost I don't want there to be any misconception, the second sentence that Mr. Shaul received was not vindictive. The reason for the first sentence and the reason that the vulnerable adult abuse was not scored—was not sentenced at 19 years to 28 years six months with whatever appropriate credit was coming, was because that sentence in and of itself would have been consumed by the more serious offense, the CSC one, which was vacated.

> Now, to be fair, I don't know why [the prosecutor] didn't object to the three years at that point because that would have required as [a Department of Corrections (MDOC) agent] said, a downward departure stated on the record for that sentence to be imposed, which was not done either. So I don't know, and nobody seemed to address that. But to impose that sentence at that time, it would have required this Court to articulate reasons for the downward departure.

> Because the guideline range for count one—now count one, abuse vulnerable adult first-degree habitual offender fourth was always and continues to be 58 to 228. That was the same guideline range that was articulated—that was scored at the first sentence. That's what this Court sentenced on the second sentence. It was within the guideline range. It was not vindictive. It was within the appropriate guideline range for that offense.

> The reason [the prosecutor] was not asking for and did not ask for the high end of the guideline has been identified by [the successor prosecutor] today, and I believe that's why [the MDOC agent] wasn't doing it either. Because that sentence in and of itself would have been consumed and absorbed by the first sentence. But when that becomes

6

vacated, then we have to look at the most serious offense and what the guideline range is for that is where we are now.

That's why the Court sentenced Mr. Shaul at that point in time on the second sentencing to 19 years to 28 years six months.  It's within the appropriate guideline range.   There was not an upward departure. There was no reason for a—reasons for an upward departure because it was not an upward departure.  It was within that guideline range.

The reason for that just to be clear, and [the prosecutor] touched on them. The victim here was a quadriplegic woman who was completely at the mercy of her caregivers as she's identified.  The defendant waited for a time where he had unfettered access to the victim, and then touched her for his own sexual gratification, exposed himself to her, made several unwanted sexual advances culminating and ejaculating on her stomach.

Now, it went further than that because we heard testimony at the time of trial, which was subsequently vacated that Mr. Shaul actually did more than that, but that's vacated so we don't have to get into that portion.  But there was more than just that activity going on.  We're only here for the vulnerable sentencing today.  But again, to be clear, the defendant refused the victim's request to leave her home and refused her pleas to allow her to call other caregivers.  In fact, her caregiver necklace was removed.

The defendant acted in a reckless disregard for the humanity of the victim and placed her in jeopardy of medical complications because of the removal of her urostomy bag, and also to remove her catheter.  His actions on that specific day and time in that frame we're looking at were deviant, reprehensible, and justify an upward departure.  I'm not going to do that today, but I think there are clearly reasons here for upward departure higher than the 228.  Again, I am not going to do that today because I don't think that's absolutely necessary, but clearly, if the Court wanted to sentence Mr. Shaul higher than what it did the first time, it would clearly be justified.

At this time, the new sentence is a sentence that's appropriate, and it's within the scored guideline range.  The scored guideline range now for this offense is 58 months to 228 months.  At this point, in reviewing the presentence report as prepared by the Michigan Department of Corrections, we must look at the sexual assault as being a destructive, catastrophic, life-changing event, and a traumatic event for the victim. While each victim response uniquely, he or she's experienced

7

problems—she did that were physical, emotional, cognitive, psychological, social, and sexual in nature at the hands of the defendant.

Therefore, the sentence at this point in time is going to be, I'm going to follow the recommendation of the Michigan Department of Corrections. To be clear for anybody looking at this later, this Court has always followed the recommendation of the Michigan Department of Corrections. It didn't act independently. This Court at time one, and time two, and I'm going to at time three, follow the recommendation as made by the Michigan Department of Corrections. That's what I did the first time, the second time, and today.

*People v. Shaul*, No. 349717, 2020 WL 5495271, at *3–4 (Mich. Ct. App. Sept. 10, 2020) (herein *Shaul III*) (emphasis added by the Michigan Court of Appeals).

The court of appeals concluded that the trial court provided a reasonable explanation for why the vulnerable adult abuse sentence was not higher in the first instance: "because the sentence for first-degree vulnerable adult abuse 'would have been consumed by the more serious offense,' CSC-I . . . ." *Id.* at *4. Moreover, the court of appeals determined that the trial court's specific reasons for imposing the 19-year minimum sentence—the victim was a quadriplegic woman, defendant waited for unfettered access, he touched her for sexual gratification, he refused her requests that he leave, he refused to allow her to call caregivers, he removed her caregiver necklace, and he removed her urostomy bag and catheter—overcame any possible presumption that the "increased" sentence was vindictive. *Id.* at *5.

Petitioner sought leave to appeal to the Michigan Supreme Court. The supreme court denied leave by order entered March 30, 2021. *People v. Shaul*, 956 N.W.2d 174 (Mich. 2021). This petition followed.

On November 23, 2021, Petitioner filed his habeas corpus petition raising one ground for relief, as follows:

I.     Should the trial court have vindictively resentenced Petitioner to an extremely higher sentence following a successful appeal, thus violating his Fourteenth Amendment right to due process?

(Pet., ECF No. 1, PageID.5.)

## II.     AEDPA standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693–94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).  "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)) (internal quotation marks omitted)).  This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002).  Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court.  *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011).  Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits.  *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts.  *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06).  "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'"  *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

10

Determining whether a rule application was unreasonable depends on the rule's specificity. *Stermer*, 959 F.3d at 721. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough*, 541 U.S. at 664. "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546–47 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review. The federal court is not free to consider any possible factual source. The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). "If a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court can

11

review the underlying claim on its merits.  *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"—for example, if he procedurally defaulted the claim—"AEDPA deference no longer applies."  *Stermer*, 959 F.3d at 721.  Then, the petitioner's claim is reviewed *de novo*.  *Id*. (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

## III.  Discussion

In *North Carolina v. Pearce*, 395 U.S. 711 (1969), *overruled in part by Alabama v. Smith*, 490 U.S. 794 (1989), the Supreme Court explained the constitutional impropriety of vindictive sentencing and adopted a new requirement to permit an assessment of whether subsequent "more severe" sentences were vindictive:

> To say that there exists no absolute constitutional bar to the imposition of a more severe sentence upon retrial is not, however, to end the inquiry.  There remains for consideration the impact of the Due Process Clause of the Fourteenth Amendment.
>
> It can hardly be doubted that it would be a flagrant violation of the Fourteenth Amendment for a state trial court to follow an announced practice of imposing a heavier sentence upon every reconvicted defendant for the explicit purpose of punishing the defendant for his having succeeded in getting his original conviction set aside.  Where, as in each of the cases before us, the original conviction has been set aside because of a constitutional error, the imposition of such a punishment, "penalizing those who choose to exercise" constitutional rights, "would be patently unconstitutional."  *United States v. Jackson*, 390 U. S. 570, 581.  And the very threat inherent in the existence of such a punitive policy would, with respect to those still in prison, serve to "chill the exercise of basic constitutional rights."  *Id*., at 582.  See also *Griffin v. California*, 380 U. S. 609; cf. *Johnson v. Avery*, 393 U.S. 483.  But even if the first conviction has been set aside for nonconstitutional error, the

12

imposition of a penalty upon the defendant for having successfully pursued a statutory right of appeal or collateral remedy would be no less a violation of due process of law.   "A new sentence, with enhanced punishment, based upon such a reason, would be a flagrant violation of the rights of the defendant." *Nichols v. United States*, 106 F. 672, 679 [(8th Cir. 1901)]. A court is "without right to . . . put a price on an appeal. A defendant's exercise of a right of appeal must be free and unfettered. . . . [I]t is unfair to use the great power given to the court to determine sentence to place a defendant in the dilemma of making an unfree choice." *Worcester v. Commissioner*, 370 F. 713, 718. See *Short v. United States*, 120 U. S. App. D. C. 165, 167, 344 F. 2d 550, 552. "This Court has never held that the States are required to establish avenues of appellate review, but it is now fundamental that, once established, these avenues must be kept free of unreasoned distinctions that can only impede open and equal access to the courts. *Griffin v. Illinois*, 351 U. S. 12; *Douglas v. California*, 372 U. S. 353; *Lane v. Brown*, 372 U. S. 477; *Draper v. Washington*, 372 U. S. 487." *Rinaldi v. Yeager*, 384 U. S. 305, 310-311.

Due process of law, then, requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial. And since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge.

In order to assure the absence of such a motivation, we have concluded that whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding. And the factual data upon which the increased sentence is based must be made part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal.

*Pearce*, 395 U.S. at 723–26 (footnotes omitted).[3]

---

[3] Although *Pearce* is the very foundation of the Supreme Court's "vindictive sentencing" jurisprudence, it is cited much more often for its analysis relating to the Double Jeopardy Clause.  The Court concluded that an increased sentence following retrial did not implicate the protections of the Double Jeopardy Clause.  *Pearce*, 395 U.S. at 717–21.

The *Pearce* opinion does not use the term "presumption" when describing the new requirement.  The Supreme Court first described the *Pearce* solution as a presumption in *United States v. Goodwin*, 457 U.S. 368, 374 (1982) ("In sum, the Court applied a presumption of vindictiveness, which may be overcome only by objective information in the record justifying the increased sentence.") (footnote omitted); *see also Wasman v. United States*, 468 U.S. 559, 569 (1984) ("In sum, where the presumption applies, the sentencing authority or the prosecutor must rebut the presumption that an increased sentence or charge resulted from vindictiveness; where the presumption does not apply, the defendant must affirmatively prove actual vindictiveness.").

The key questions, therefore, are: (1) Does the presumption apply? and, if it does, (2) Did the trial court provide sufficient objective information in the record to justify the increased sentence?  When answering the first question, it is helpful to keep in mind the motivations that animate every criminal prosecution:

> The imposition of punishment is the very purpose of virtually all criminal proceedings.  The presence of a punitive motivation, therefore, does not provide an adequate basis for distinguishing governmental action that is fully justified as a legitimate response to perceived criminal conduct from governmental action that is an impermissible response to noncriminal, protected activity.  Motives are complex and difficult to prove.  As a result, in certain cases in which action detrimental to the defendant has been taken after the exercise of a legal right, the Court has found it necessary to "presume" an improper vindictive motive.  Given the severity of such a presumption, however— which may operate in the absence of any proof of an improper motive and thus may block a legitimate response to criminal conduct—the Court has done so only in cases in which a reasonable likelihood of vindictiveness exists.

*United States v. Goodwin*, 457 U.S. 368, 372–73 (1982).  The *Goodwin* Court made clear that "a mere opportunity for vindictiveness is insufficient to justify the imposition of a prophylactic rule."  *Id*. at 384.  In *Wasman*, 468 U.S. at 559, the Court again emphasized the limited nature of the *Pearce* "prophylactic rule":

> Because of its "severity," *see Goodwin, supra*, at 373, 102 S.Ct., at 2489, the Court has been chary about extending the *Pearce* presumption of vindictiveness when the likelihood of vindictiveness is not as pronounced as in *Pearce* and *Blackledge*[, a case about prosecutorial vindictiveness].  This reluctance is understandable for, as we have noted, operation of the presumption often "block[s] a legitimate response to criminal conduct."  457 U.S., at 373, 102 S.Ct., at 2489.

*Id*. at 566.

The Michigan Court of Appeals specifically relied on *Pearce* for the standard. The court answered "yes" to both questions and, accordingly, denied Petitioner relief. Unquestionably, the Michigan Court of Appeals applied the correct standard when it addressed Petitioner's vindictive sentencing claim.  But this Court concludes that the court of appeals applied the standard unreasonably when it answered "yes" to the first question.

The *Pearce* court considered two separate claims, the claim of Pearce who was convicted in North Carolina and the claim of Rice who was convicted in Alabama. Understanding the specific facts at issue in *Pearce* provides useful guidance in determining when the presumption is applicable.

Pearce was convicted of assault with intent to commit rape.  He was sentenced to prison for a term of 12 to 15 years.  He later sought and was granted post-conviction relief; his conviction was reversed.  On retrial, he was again convicted.  The judge sentenced him to prison term of 8 years (in addition to the 6 years, 6 months, and 17

days he had already served).  Although nominally shorter than Petitioner's original sentence, when added to the time he had already served, his total sentence was longer.  The Court demonstrated that fact by comparing the expiration date of Petitioner's original sentence, November 13, 1969, to the expiration date of the new sentence, October 10, 1972.

Rice pleaded guilty to four separate charges of second-degree burglary.  He was sentenced to prison terms aggregating 10 years, 4 years on one charge and 2 years on each of the other charges, all to be served consecutively.  After two and one-half years, the judgments were set aside.  Petitioner was retried on three charges and sentenced to prison terms aggregating 25 years: 10 years on two of the charges and 5 on the third charge, all to be served consecutively.

The Court concluded that "whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear." *Pearce*, 395 U.S. at 726.  The Court concluded that both judges had imposed more severe sentences and that neither had provided reasons.

In the years since *Pearce*, the Supreme Court has clarified the circumstances that give rise to the presumption.  The Court has identified certain situations that do not implicate vindictiveness such that the presumption does not apply.  The Court has concluded that retrial by a different court does not implicate vindictiveness, *Colten v. Kentucky*, 407 U.S. 104, 105 (1972), resentencing by a different jury does not implicate vindictiveness, *Chaffin v. Stynchcombe*, 412 U.S. 17, 24–28 (1973), retrial granted by the resentencing judge—rather than the appellate court—and

16

imposition of the initial sentence by a jury, not that judge, do not implicate vindictiveness, *Texas v. McCullough*, 475 U.S. 134, 137–40 (1986).  Moreover, in *Smith*, 490 U.S. at 794, the Court concluded that "there is no basis for a presumption of vindictiveness where a second sentence imposed after a trial is heavier than a first sentence imposed after a guilty plea . . . ." *Id.* at 803.  Thus, the Court overruled that part of the *Pearce* decision that favored Petitioner Rice.

In short, *Pearce* appears "on its face to announce a rule of sweeping dimension," *id.* at 799, but that is not the case.  Instead, "[b]ecause the *Pearce* presumption may operate in the absence of any proof of an improper motive and thus . . . block a legitimate response to criminal conduct, we have limited its application, like that of other judicially created means of effectuating the rights secured by the [Constitution], to circumstances where its objective are thought most efficaciously served." *Id.* (citations and internal quotes omitted).  The Court has recognized that "*Pearce* is not without its ambiguities[.]" *Wasman*, 468 U.S. at 570.  Yet, the Supreme Court has not provided further clarification regarding when the presumption applies for years. *See, e.g.*, *Plumley v. Austin*, 574 U.S. 1127 (2015) (the dissent of Justices Scalia and Thomas from denial of the petition for writ of certiorari is the most recent Supreme Court citation to *Pearce* regarding the vindictive sentencing issue).

The Supreme Court's clarifications of the applicability of the *Pearce* presumption focus on specific circumstances that do not suggest that vindictiveness is the motivation for the imposition of an increased sentence on resentencing.  The Court has not provided clarification for the determination of when a new sentence is,

in fact, an increase over the prior sentence.  The federal circuit courts of appeals have reached clear conclusions on that issue, conclusions that indicate that the presumption should not apply to Petitioner.

In multi-count cases, particularly where the counts are related, where conviction on one count is reversed on appeal, and the defendant is retried and resentenced or simply resentenced[4] on the remaining count(s), the federal courts of appeals have compared the aggregate sentence initially imposed to the aggregate sentence upon resentencing.  *See, e.g.*, *United States v. Pimienta-Redondo*, 874 F.2d 9, 12–16 (1st Cir. 1989); *United States v. Weingarten*, 713 F.3d 704, 713–15 (2d Cir. 2013)[5]; *Kelly v. Neubert*, 898 F.2d 15 (3d Cir. 1990); *United States v. Abed*, 3 F.4th 104, 114 (4th Cir. 2021); *United States v. Campbell*, 106 F.3d 64, 67–68 (5th Cir. 1997); *Craycraft v. Cook*, 634 F. App'x 490 (6th Cir. 2015); *United States v. Mancari*, 914 F.2d 1014, 1020 (7th Cir. 1990); *United States v. Evans*, 314 F.3d 329, 334 (8th Cir. 2002); *United States v. Bay*, 820 F.2d 1511, 1512–14 (9th Cir. 1987); *United States v. Fortier*, 242 F.3d 1224, 1229 (10th Cir. 2001); *United States v. Sullivan*, 967 F.2d 370, 374–75 (10th Cir. 1992); *United States v. Fowler*, 794 F.3d 1010, 1018–21

---

[4] When a conviction is reversed for insufficiency of the evidence, the Double Jeopardy Clause precludes retrial.  *Burks v. United States*, 437 U.S. 1 (1978).

[5] The Second Circuit Court of Appeals is often recognized as a court that endorses a "count-by-count" approach.  Indeed, the *Weingarten* opinion acknowledges as much. Nonetheless, where several counts are related and one is vacated, the *Weingarten* court made clear that the relevant comparison is not count-by-count.  *Weingarten*, 713 F.3d at 714 ("Where one or more of several related counts have been vacated, and the district court on resentencing has increased the sentence on the remaining, related counts to maintain the same aggregate sentence as before, no presumption of vindictiveness applies.").  Certainly, if the same sentence does not give rise to the presumption, a lesser sentence would not either.

(11th Cir. 2014)[6]; *United States v. Morris*, 116 F.3d 501 (D.C. Cir. 1997).  That was the comparison urged by the prosecutor in Petitioner's case, the original sentence to the final sentence—60 to 90 years to 19 years to 28 years, 6 months.  It was also the comparison rejected by the Michigan Court of Appeals.  Instead, that court chose to compare the original sentence disregarding the vacated count—3 years, 10 months to 15 years—to the final sentence imposed.

Based on the law applied by every circuit, the Michigan Court of Appeals used the wrong comparison.  But, no matter how logical it might be to compare the aggregate initial sentence to the aggregate final sentence to determine if there has been an "increase," the Supreme Court has never expressly adopted that approach.  Accordingly, the state appellate court's "count-by-count" approach is not contrary to, or an unreasonable application of, *Pearce*.  Certainly, at least as a general proposition, "fairminded jurists could disagree" as to whether the "count-by-count" approach is an appropriate measure of whether there has been an increase.  Yet, it does not appear that any court has applied that approach where one of several related counts has been vacated, as in Petitioner's case.

The Supreme Court's general statements of AEDPA deference would appear to preclude this Court from denying the petition on a ground that effectively rejects the determinations of the state court.  *See Harrington*, 562 U.S. at 98 ("By its terms § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court,

---

[6] The Eleventh Circuit Court of Appeals also followed a "count-by-count" approach at one point. *Fowler*, 794 F.3d at 1018–21 (describing and refusing to extend the holding of *United States v. Monaco*, 702 F.2d 860 (11th Cir. 1983)).

subject only to the exceptions in §§ 2254(d)(1) and (2).").  But the habeas statute only limits this Court's habeas review when granting habeas relief:  "[a]n application for writ of habeas corpus . . . ***shall not be granted*** with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—(1) resulted in a  decision that was contrary to, or involved an unreasonable application of, clearly established Federal law . . . or (2) resulted in a decision that was based on an unreasonable determination of the facts . . . ."  28 U.S.C. § 2254(d) (emphasis added).  The statute does not appear to compel such deference when denying habeas relief.  Thus, to the extent this Court is permitted to reject the state court's determination that the *Pearce* presumption applies to Petitioner's case—even if that determination does not run afoul of "clearly established Federal law, as determined by the Supreme Court of the United States, *id*.—this Court so rejects that determination.

Absent the presumption, Petitioner must demonstrate that his new sentence was actually motivated by vindictiveness.  The only evidence he offers to support such a claim is that 19 years to 28 years, 6 months is longer than 3 years, 10 months to 15 years.  That showing is plainly insufficient.  Accordingly, if the presumption is not applicable, Petitioner has failed to demonstrate that he is in custody in violation of the United States Constitution and he is not entitled to habeas relief.

If this Court is bound to defer to the state court's determination that the presumption applies, the result is the same.   If the count-by-count change in Petitioner's sentence constitutes an "increase" under *Pearce*, Petitioner may rely on the presumption of vindictiveness, but that does not take him very far.

When the court of appeals first considered the issue after the first remand, and applied the presumption, the reasons did not "affirmatively appear" in the record. *Pearce*, 395 U.S. at 726 ("[W]henever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear."). The second remand, however, corrected that deficiency.   The trial judge explained his principal reason: "because that sentence [on the vulnerable adult abuse count] in and of itself would have been consumed by the more serious offense, the CSC one, which was vacated."   Indeed, that is the very reason that the federal courts of appeals have concluded that the appropriate comparison to determine severity is a straightforward measuring of the initial sentence against the new one—because sentencing, particularly sentencing on related counts—is a package deal:

> [T]he aggregate approach best reflects the realities faced by district court judges who sentence a defendant on related counts of an indictment.  Sentencing is a fact-sensitive exercise that requires district court judges to consider a wide array of factors when putting together a "sentencing package."  When an appellate court subsequently reverses a conviction (or convictions) that was part of the original sentence, the district court's job on remand is to reconsider the entirety of the (now-changed) circumstances and fashion a sentence that fits the crime and the criminal.  *See Pimienta-Redondo*, 874 F.2d at 15.  The aggregate approach's inherent flexibility best comports with this important goal.

*Campbell*, 106 F.3d at 68 (footnotes omitted).  As the Supreme Court has explained regarding federal sentencing:

> "A criminal sentence is a package of sanctions that the district court utilizes to effectuate its sentencing intent." *United States v. Stinson*, 97 F.3d 466, 469 (11th Cir. 1996) (*per curiam*). Because a district court's "original sentencing intent may be undermined by altering one portion of the calculus," *United States v. White*, 406 F.3d 827, 832 (7th Cir. 2005), an appellate court when reversing one part of a defendant's sentence "may vacate the entire sentence . . . so that, on remand, the trial court can reconfigure the sentencing plan . . . to satisfy the sentencing factors in 18 U.S.C. § 3553(a)," *Greenlaw v. United States*, 554 U.S. 237, 253 (2008).

*Pepper v. United States*, 562 U.S. 476, 507 (2011).

The comprehensive approach to sentencing reflected in 18 U.S.C. § 3553 in the federal system is captured in the requirement of reasonableness in the Michigan sentencing scheme. Sentences must be reasonable and proportionate "to the seriousness of the circumstances surrounding the offense and the offender." *People v. Steanhouse*, 902 N.W.2d 327, 329 (Mich. 2017) (internal quotes omitted). Certainly, the facts relating to the offense did not change between Petitioner's first sentence and the second one; but once the sentence of 60 to 90 years was vacated, it inevitably called into question whether the "seriousness of the circumstances surrounding the offense" were taken into account in a sentence of 3 years, 10 months, to 15 years.[7]

---

[7] The Second Circuit Court of Appeals concluded that the vacatur of one of several related convictions is an intervening change that may justify a new "increased" sentence. *See Weingarten*, 713 F.3d at 714 ("Weingarten ignores one important change in circumstances: the vacatur of Count Three, and the consequent change from a sentence based on five counts to a sentence based on four. Nothing in *Pearce* suggests that intervening changes in law or conduct by the defendant are the *only* possible intervening changes in situation that could make a presumption of vindictiveness inapplicable.") (emphasis in original).

The trial court reviewed the "seriousness of the circumstances" and concluded that the sentence package did not adequately take those circumstances into account once the sentence of 60 to 90 years is removed from the package.  The court then imposed a sentence within the recommended guidelines minimum range.  The Michigan Court of Appeals reviewed the facts that contributed to the trial court's conclusion regarding the seriousness of the offense—"the victim was a quadriplegic woman, [and] defendant waited until he had 'unfettered access' to her, touched her for purpose of sexual gratification[,] 'refused the victim's request to leave her home'[,] refused to allow the victim to call her caregivers[,] . . . [and] removed the victim's caregiver necklace, urostomy bag, and catheter during this act."  *Shaul III*, 2020 WL 5495271, at *5.  Those facts constitute "objective information concerning identifiable conduct on the part of the defendant" that the trial court believed had been taken into account in the 60-to-90-year sentence, but not the sentence of 3 years, 10 months, to 15 years.  Because the record demonstrated that the trial court altered Petitioner's sentence based on those objective facts, the court of appeals determined that Petitioner could not show the new sentence was vindictive.  That is entirely consistent with *Pearce*, the clearly established federal law regarding vindictive sentencing, and is well-grounded in the record.  Accordingly, even if the presumption applies, Petitioner is not entitled to habeas relief.

## IV.     Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted.  A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability.  *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted.  *Id.*  Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  *Murphy*, 263 F.3d at 467.  Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard.  Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id.*  "A petitioner satisfies this standard by demonstrating that . . . jurists of reason could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims.  *Id.*

24

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong.  Therefore, the Court will deny Petitioner a certificate of appealability.  Moreover, although Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## **Conclusion**

The Court will enter a judgment dismissing the petition and an order denying a certificate of appealability.


Dated: December 30, 2021            /s/ Phillip J. Green
                                    PHILLIP J. GREEN
                                    United States Magistrate Judge